**SUSAN MARTIN (AZ#014226)**
**JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Baptist, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: |
| Microchip Technology, Inc., Plan Administrator of the Microchip Technology, Inc. Medical Plan; Microchip Technology Inc. Medical Plan, | ) **COMPLAINT** |
| Defendants. | ) |

This is an action under the Employee Retirement Income Security Act, as amended, ("ERISA"), 29 U.S.C. § 1001 *et. seq.* to recover health benefits due and to enforce rights under and remedy violations of the terms of a health benefits plan and ERISA.

**JURISDICTION AND VENUE**

1.  Jurisdiction of this matter is appropriate pursuant to 29 U.S.C. §1132(e), (f) and 28 U.S.C. §1331.

2.  Venue is proper pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391 as Defendants breached their obligations in the State of Arizona, Defendants may be found

in the State of Arizona and the plan is administered in the State of Arizona.

**PARTIES**

3. Plaintiff Jennifer Baptist ("Plaintiff" or "Ms. Baptist") is and was at all times relevant an employee of Microchip Technology Inc. ("Microchip") and a participant in the Microchip Technology Inc. Medical Plan ("Plan") within the meaning of §3(7) of ERISA, 29 U.S.C. §1002(7).

4. Ms. Baptist's minor son, H.B., whose full name is set forth on Exhibit A hereto, is and was at all times relevant a beneficiary under the Plan within the meaning of §3(8) of ERISA, 29 U.S.C. §1002(8).

5. Defendant Plan is an employee benefit plan within the meaning of §3(3) of ERISA, 29 U.S.C. §1002(3) providing health and medical benefits to eligible employees of Microchip and their eligible beneficiaries.

6. Defendant Microchip Technology Inc. ("Plan Administrator") is the named Plan Administrator for the Plan within the meaning of §3(16)(A) of ERISA, 29 U.S.C. §1002(16)(A), 29 U.S.C. § 1002(16)(A) and "plan sponsor" and a "fiduciary" under the Plan as defined in §§ 3(16)(B) and 3(21) of ERISA, 29 U.S.C. §§1002(16)(B) and 1002(21).

**GENERAL ALLEGATIONS**

7. Plaintiff has worked for Microchip for nearly 17 years, from in or around June 1997 to the present.

8. At all times relevant, Plaintiff's dependent son, H.B., who is a minor, was eligible for benefits under the Plan.

9. H.B. has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD").

10. H.B. has also been diagnosed as suffering from significant anxiety.

11. ADHD and anxiety disorders are recognized illnesses in the Diagnostic and Statistical Manual of Mental Disorders ("DSM").

12. In an in-person neuropsychological evaluation and assessment of H.B. conducted by neuropsychologist Dr. Joy Goldberg of Phoenix Children's Hospital in 2008, H.B. was found to have "notable impairment with attention and concentration functioning, as well as impairment with inhibiting and monitoring his behavior."

13. Dr. Goldberg concluded that H.B. suffers from "significant anxiety" and that H.B.'s "hyperactivity, impulsivity, and inattention….[are] associated with [H.B.]'s anxious behaviors and ADHD-like behaviors."

14. Christopher Nicholls, Ph.D., a neuropsychologist who has personally examined and evaluated H.B., concluded that as a result of ADHD, H.B.'s ability to process information is significantly impaired.

15. Based on his examination and neuropsychological testing, Dr. Nicholls concluded that H.B. "has clear deficits in self-regulation and rule-governed behavior."

16. Dr. Nicholls reported that H.B. has "difficulties with focused and sustained attention, impulse/inhibitory control, and functional/working memory."

17. Dr. Nicholls also concluded that H.B.'s decision making process is altered by H.B.'s ADHD and results in impulsive behavior that he is unable to control.

18. H.B receives accommodations at school under Section 504 of the Rehabilitation Act of 1973 because his mental processing abilities and ability to maintain attention are adversely impacted by his ADHD and his anxiety and substantially limit H.B.'s ability to learn.

19. The Plan covers charges for medically necessary treatment for, *inter alia*, medical emergencies, hospital services, physician services and air ambulance services when medically necessary to diagnose and treat an injury or sickness.

20. The treatment of ADHD is also covered by the Plan.

21. Under the terms of the Plan, mental disorders recognized by the DSM and substance abuse disorders are "[c]overed for care, supplies and treatment…."

22. On or about July 31, 2012, H.B. who was 14 years old at the time, rode his

bicycle home from his freshman orientation at high school.

23.     When H.B. arrived home around 3:40 pm from his 3 mile bicycle ride, his face was flushed and red.

24.     H.B. was home for approximately only one hour by himself, from approximately 4:00 p.m. to 5:10 p.m. while his mother went shopping nearby.

25.     At approximately 5:10 p.m., H.B. was found passed out and unresponsive with vomit next to his head.

26.     During the approximately one hour when H.B. was home alone, H.B. drank a substantial quantity of liquor and suffered an injury as a result.

27.     Ms. Baptist drove H.B. to the hospital, where he was observed to have labored, shallow breathing, was unresponsive and vomiting and was given medically necessary treatment.

28.     H.B., who in addition to his ADHD, suffers from asthma, was determined by the hospital to need a higher level of care and was subsequently flown by air ambulance flight crew to a specialty children's hospital.

29.     As a result of his injuries related to the July 31, 2012 accident/illness, H. B. incurred claims for medically necessary services to treat and diagnose his injuries.

30.     Claims for these services were submitted to the Plan for payment.

31.     Services rendered to H.B. related to the July 31 2012 accident and/or illness were medically necessary services to treat H.B.'s injuries and/or sickness.

32.     However, the Plan has denied all of the claims for the services rendered to H.B. related to the July 31, 2012 accident/illness.

33.     The reasons given for the denials by Defendants were that that "[a]lcohol intoxication is not a symptom of ADHD" and that the Plan excludes treatment for conditions related to the illegal consumption of alcohol.

34.     The Medical Plan Exclusions relied on by the Plan state, in relevant part:
        (2)     Alcohol.  Services, supplies, care or treatment to a Plan Participant for an Injury or Sickness which occurred as a result of that Plan Participant's illegal use of alcohol. The arresting officer's

> determination of inebriation will be sufficient for this exclusion. Expenses will be covered for Injured Plan Participants other than the person illegally using alcohol and expenses will be covered for Substance Abuse treatment as specified in this Plan. This exclusion does not apply if the injury resulted from an act of domestic violence or a medical (including both physical and mental health) condition.
> ***
> (24)   Illegal Acts.  Care, supplies, treatment, and/or services for any Injury or Sickness which is Incurred while taking part or attempting to take part in an illegal activity, including but not limited to misdemeanors and felonies. It is not necessary that an arrest occur, criminal charges be filed, or, if filed, that a conviction result. Proof beyond a reasonable doubt is not required to be deemed an illegal act. This exclusion does not apply (a) if the Injury resulted from being the victim of an act of domestic violence, or (b) resulted from a medical condition (including both physical and mental health conditions).

35. The denial of Ms. Baptist's and H.B.'s claims for benefits for services rendered to H.B. related to the July 31, 2012 accident/illness violates the terms of the Plan.

36. H.B.'s injuries and/or illness were the result of his medical condition, including his ADHD.

37. Dr. Nicholls concluded that H.B.'s "episode of acute intoxication is specifically and directly tied to his underlying neurological disorder."

38. Dr. Nicholls further reported and concluded that another trait of H.B.'s ADHD that caused H.B's injuries is H.B.'s inability to keep track of time and his constant distractions. Because H.B. has difficulty keeping track of time this can be attributed to the amount that he drank in such a short period of time.

39. H.B.'s underlying neurological disorder of ADHD is covered by the Plan and is a medical condition that caused H.B.'s accident/illness on July 31, 2012.

40. Defendants do not dispute that H.B. has ADHD.

41. Although Defendants have relied on an exclusion for "illegal" use of alcohol and "illegal" acts as a basis to deny claims, despite Plaintiff's requests, Defendants have never identified any law that H.B. purportedly violated and H.B. has never been arrested or cited for violating any law.

42. Even if Defendants' failure to identify any law they claim that H.B. was

alleged to have broken did not bar them from denying his claim and appeal for purported illegal acts, the Plan requires that services rendered to H.B. must be covered because H.B.'s injuries are the result of a medical (physical or mental health) condition.

43. The only doctor who personally examined and evaluated H.B. determined that in this instance the injuries at issue resulted from H.B.'s medical condition.

44. Despite the fact that all of the Plan's medical reviewers stated that they needed additional information in order to determine if H.B.'s ADHD was responsible for his injuries, the Plan never conducted an in-person review of H.B. and arbitrarily and illogically failed to credit the assessments of the only physicians and medical professionals who conducted in-person examinations of H.B.

45. H.B.'s asthma and medications given at the hospital caused much of H.B.'s injuries and were conditions covered under the terms of the Plan.

46. By letter dated April 1, 2013, Defendants denied Ms. Baptist's claim for services rendered to H.B. as a result of his July 31, 2012 accident.

47. The Plan's April 1, 2013 letter advised Ms. Baptist that she needed to provide additional information in support of her claim including, *inter alia*, "Current clinical treatment documentation supporting the severity of the patient's mental health condition; and the treatment on July 31 to August 1, 2012 was directly attributed from the patient's mental health condition."

48. Under the terms of the Plan and ERISA, Ms. Baptist has 180 days to file a written appeal from an adverse benefit determination.

49. By letter dated April 18, 2013, Ms. Baptist requested documents relevant to her appeal including, *inter alia*, the identity of the medical reviewer used by the Plan to deny her claims and copies of the "References Used in Support of Decision" cited by the Plan's medical reviewer.

50. In violation of the terms of the Plan and ERISA regulations, Defendants initially refused to supply the name or identity of the medical reviewer used to support

the Plan's determination and did not supply such identity until July 17, 2013, 90 days after Plaintiff's request, only after further requests and after Plaintiff advised Defendants that their failure to provide the identity of the medical reviewer was unlawful.

51. Defendants have continually failed and refused to provide Ms. Baptist with copies of the "References Used in Support of Decision" in response to Ms. Baptist's requests.

52. Although under the terms of the Plan and ERISA, Ms. Baptist had 180 days, until September 28, 2013, to submit her written appeal from the denial of the claim for benefits, Defendants advised Ms. Baptist on or about August 13, 2013, that they had reached a final determination on her appeal.

53. By letter dated August 16, 2013, Ms. Baptist, through her attorneys, advised Defendants that Defendants had failed to allow Ms. Baptist the appropriate time to provide the information Defendants had requested to support her appeal, had failed to provide documents Ms. Baptist requested that she was entitled to receive under the Plan and ERISA and failed to provide her with an adequate opportunity to appeal the determination.

54. Ms. Baptist's August 16, 2013 letter also advised Defendants that she would file such appeal on or before September 28, 2013 in accordance with the terms of the Plan and ERISA and asked Defendants to confirm that they would consider Ms. Baptist's appeal in accordance with the terms of the Plan documents and ERISA.

55. By letter dated September 26, 2013, Ms. Baptist timely submitted the appeal from the April 18, 2013 denial of her claim for benefits.

56. In violation of the terms of the Plan and ERISA, by letter dated October 28, 2013, Defendants refused to consider Ms. Baptist's September 26, 2013 appeal.

57. The Plan's October 28, 2013 letter advised Plaintiff that she could request an "external review."

58. Plaintiff timely requested an external review.

7

59. Plaintiff's request for an external review was denied by letter dated January 25, 2014.

60. Plaintiff fully exhausted all claims review procedures prior to filing suit.

## COUNT I
**FOR RECOVERY OF BENEFITS AND ENFORCEMENT OF RIGHTS UNDER THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B)**

61. Plaintiff repeats and realleges each allegation set forth in the previous paragraphs as though fully set forth herein.

62. Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), provides that:
A civil action may be brought -
    (1) by a participant or beneficiary - . . .

        (B) to recover benefits due to him under the terms of
        the plan, to enforce his rights under the terms of the
        plan, or to clarify his rights to future benefits under the
        terms of the plan.

63. By the acts complained of above, Defendants violated the terms of the Plan.

64. As a proximate result of Defendants' violations of the Plan, Plaintiff has been harmed and has been deprived of benefits due.

65. As a result of Defendants' violations of the terms of the Plan, Plaintiff is entitled to an order declaring that Defendants violated the terms of the Plan, requiring Defendants to calculate and pay Plaintiff's benefits under the Plan for claims related to H.B.'s July 31, 2012 accident/illness with prejudgment interest, to provide an accounting of such payments and to pay postjudgment interest, attorneys' fees and costs.

## COUNT II
**TO REDRESS DEFENDANTS' VIOLATIONS OF ERISA'S DISCLOSURE REQUIREMENTS AND CLAIMS PROCEDURE REQUIREMENTS**

66. Plaintiff repeats and realleges each allegation set forth in the previous paragraphs as though fully set forth herein.

67. Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:
  In accordance with regulations of the Secretary, every employee

> benefit plan shall--
> **(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> **(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

68.   ERISA §503, and regulations thereunder, 29 C.F.R. §2560.503-1, provide that a plan administrator must provide a full and fair review of a claim that is denied, must allow claimants 180 days in which to submit documents and information in writing in support of an appeal, and must provide claimants upon request and free of charge all documents relevant to their claim and appeal for benefits along with a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

69.   Section 502(c)(1)(B) of ERISA, 29 U.S.C. §1132(c)(1)(B), provides in pertinent part:

> Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, . . .each violation described in subparagraph (b) with respect to a single participant or beneficiary, shall be treated as a separate violation.

70.   Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in ERISA §502(c) was increased to $110. 29 C.F.R. §2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1) of ERISA [has been] increased from $100 a day to $110 a day."

9

71. By the acts and omissions set forth above, Defendants violated ERISA and the Plan's disclosure requirements and applicable regulations. As a result of Defendants' acts and omissions, Plaintiff has been damaged and his rights to benefits under the Plan, and to pursue her claims for benefits under the Plan, have been unduly inhibited, thwarted, prejudiced and delayed.

72. As a proximate result of the acts and omissions set forth above, Defendants violated ERISA's claims procedure and disclosure requirements and applicable regulations and failed to provide Plaintiff with a full and fair review. As a result of Defendants' acts and omissions, Plaintiff has been harmed and her right to benefits under the Plan, and to pursue claims for benefits under the Plan, were unduly inhibited, thwarted, prejudiced and delayed.

73. ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

74. Pursuant to ERISA §§502(a)(3), 502(c)(1)(B) and 503, Plaintiff is entitled to civil monetary penalties of $110 for each day for each separate violation for failing to provide Plaintiff with requested documents and injunctive and other equitable relief to redress Defendants' claims procedure and disclosure violations, including, *inter alia*, enjoining Defendants from violating the claims procedures and disclosure requirements, attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

    A.    Declaring that Defendants violated the terms of the Plan;

    B.    Declaring that Defendants violated ERISA §503 and regulations thereunder;

C. Declaring that Plaintiff is entitled to benefits under the Plan for services related to the July 31, 2012 injuries and illness, together with interest and attorneys' fees and costs;

D. Enjoining Defendants from violating the terms of the Plan or ERISA;

E. Enjoining Defendants to pay Plaintiff health benefits under the Plan;

F. Enjoining Defendants to make Plaintiff whole for the delay and failure to pay benefits in accordance with the Plan and ERISA;

G. Enjoining Defendants from violating ERISA's claims procedures requirements;

H. Enjoining Defendants from violating ERISA's disclosure requirements;

I. Awarding Plaintiff all benefits wrongfully withheld;

J. Awarding Plaintiff $110 per day for each day in excess of thirty for each and every document Defendants failed to provide to her in timely fashion;

K. Awarding Plaintiff prejudgment and postjudgment interest;

L. Awarding Plaintiff all attorneys' fees under ERISA §502(g), 29 U.S.C. §1132(g);

M. Awarding Plaintiff costs of suit; and

N. Awarding such other and further relief the Court deems appropriate.

DATED this 12th day of May, 2014.

**MARTIN & BONNETT, P.L.L.C.**

By: s/Susan Martin
    Susan Martin
    Jennifer L. Kroll
    1850 N. Central Ave. Suite 2010
    Phoenix, AZ 85004
    (602) 240-6900

    Attorneys for Plaintiff

.

**EXHIBIT A TO COMPLAINT FILED UNDER SEAL**