**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Baptist,<br><br>            Plaintiff,<br><br>v.<br><br>Microchip Technology Incorporated, et al.,<br><br>           Defendants. | No. CV-14-01027-PHX-SRB<br><br>**ORDER** |

At issue are Defendants' Motion for Summary Judgment ("DMSJ") (Doc. 70) and Plaintiff's Motion for Summary Judgment ("PMSJ") (Doc. 79). The Court heard oral argument on both Motions on January 8, 2016. (Doc. 100, Minute Entry.)

**I.  BACKGROUND**

This case arises from a dispute between Plaintiff and her employer, Defendant Microchip Technology, Inc. ("Microchip"), over whether her son, H.B., is entitled to coverage as a beneficiary under the Microchip Technology Medical Plan ("the Plan") for certain medical services he received in July 2012. (Doc. 16, Am. Compl. ¶¶ 3-76.) One afternoon while home unsupervised, H.B. consumed enough alcohol to cause acute alcohol intoxication. (Doc. 71, Defs.' Statement of Facts ("DSOF") ¶¶ 12-13; Doc. 85, Pl.'s Controverting and Supplemental Statement of Facts in Resp. to DSOF ("PCSOF") ¶¶ 12-13.) H.B. required emergency care at a specialty children's hospital to recover from his injuries. (DSOF ¶ 7; PCSOF ¶ 7.) The providers submitted medical claims to Mountain States Administrative Services ("Mountain States") for reimbursement. (DSOF

¶ 14; PCSOF ¶ 14.)[1] The initial claims were denied and Mountain States requested additional information from the providers. (DSOF ¶ 18; PCSOF ¶ 18.) In November 2012, Plaintiff received Explanation of Benefit ("EOB") forms explaining that the claims were denied based on policy exclusions for illegal acts and alcohol.[2] (Doc. 74-7, R. at 43-45, 55-56, 63-64.) In December 2012, Linda Croft, the designated Plan Administrator at Microchip, indicated in writing that she believed the claims were wrongfully denied and that H.B.'s expenses were covered under the Plan. (*See* DSOF ¶ 23; PCSOF ¶ 23.) During her deposition, Ms. Croft stated that after learning that it is illegal in Arizona for a person under the age of 21 to drink alcohol even in his home, she agreed that the Plan exclusions applied. (Doc. 87-1, Ex. 1, Dep. of Linda Croft at 48:14-23.)

Plaintiff timely appealed Mountain States' denial. (DSOF ¶ 26; PCSOF ¶ 26.) HealthSmart denied the claim based on the illegal use of alcohol; illegal activities and self-inflicted injuries exclusion of the Plan. (Doc. 74-6, R. at 12-13.) HealthSmart further advised Plaintiff that the exclusions do not apply if the injury resulted from a medical condition and in order to demonstrate that Plaintiff's claim was covered by the plan, Plaintiff would have to provide documentation and a signed physician statement of H.B.'s medical health history and diagnosis prior to the incident. (*Id.* at 13.) Plaintiff subsequently supplied HealthSmart with additional documentation and the file was submitted to a medical reviewer who concluded that "[t]he diagnosis of ADHD and ADDH does affect the claimant's decision making process, as patients with the condition are impulsive and sometimes act without making good decisions." (DSOF ¶ 30; PCSOF ¶ 30; Doc. 74-6, R. at 62.) HealthSmart asked the medical reviewer some follow-up questions and received the medical reviewer's responses. (DSOF ¶¶ 33, 35, 39; PCSOF

---

[1] Mountain States was acquired by Health Smart Holdings, Inc. ("HealthSmart") in January 2013. (DSOF ¶ 6; PRDSOF ¶ 6.)

[2] The parties stipulated to the admission of documents in the "Administrative Record." (*See* Doc. 74, Stipulation Re: Admin. R.) The stipulation "[was] made without waiver of the parties' rights to submit additional evidence and arguments that additional documents are part of the administrative record and/or should be considered by the Court . . . ." (Stipulation Re: Admin. R. at 2.) All citations to "R." refer to this administrative record, which is recorded on the docket in multiple parts.

¶¶ 33, 35, 39.) On April 1, 2013, HealthSmart sent Plaintiff a letter again denying the claim. (DSOF ¶ 41; PCSOF ¶ 41.) In the denial letter, HealthSmart explained that information that linked H.B.'s Attention Deficit Hyperactivity Disorder ("ADHD") diagnosis with his alcohol consumption was necessary to support the claim. (Doc. 74-6, R. at 18-20.) Plaintiff requested documents from HealthSmart on April 18, 2013. (DSOF ¶¶ 41-44; PCSOF ¶ 41.) After Plaintiff complained to Ms. Croft that she had not received the documents, Ms. Croft contacted HealthSmart about the information request. (DSOF ¶¶ 47-48; PCSOF ¶¶ 47-48.) Plaintiff received the documents on May 17, 2013. (DSOF ¶ 50; PCSOF ¶ 50.) Plaintiff also asked Ms. Croft for information regarding the time limits for appeal. (DSOF ¶ 49; PCSOF ¶ 49.) In response to this inquiry, Plaintiff was told that the 180-day appeal period began from the denial of the first claim. (DSOF ¶ 51; PCSOF ¶ 51.)

Between May and August 2013, Plaintiff was in communication with representatives at HealthSmart and the Plan. Sue Flores, who had taken over for Ms. Croft, claims that in July Plaintiff stated that she had no additional information to submit. (DSOF ¶ 64.) After this, Ms. Flores submitted the claim for a third medical review. (DSOF ¶ 65; PCSOF ¶ 65.) When the review was again adverse, the Plan made its decision and issued the final denial. (DSOF ¶¶ 70, 72; PCSOF ¶ 70.) In a letter dated August 9, 2013, HealthSmart informed Plaintiff that this was a "final denial." (Doc. 74-6, R. at 28-30.) Plaintiff disputes that she told Ms. Flores that she had no further information to submit and that, in fact, she was consulting another doctor, Dr. Nicholls, to examine H.B. and provide an analysis of whether his ADHD could cause excessive alcohol consumption. (PCSOF ¶ 64.) Plaintiff supplied Dr. Nicholls's report on September 26, 2013. (Doc. 75, Pl.'s Statement of Facts in Supp. of PMSJ ("PSOF") ¶ 169.) At Plaintiff's request, the Plan sent the entire file including Dr. Nicholls's report to an external reviewer. (*Id.* ¶ 174.) The external reviewer also denied Plaintiff's claims on January 25, 2014. (*Id.* ¶ 177.) Plaintiff then filed this lawsuit.

Plaintiff filed this lawsuit seeking the payment of benefits under ERISA section

502(a)(1)(B) (Count One). (Am. Compl. ¶¶ 77-81.) Plaintiff also seeks "injunctive and other equitable relief" under ERISA section 502(a)(3) to redress purported violations of the ERISA claims procedure requirements (Count Two) and fiduciary duty breaches (Count Three). (*Id.* ¶¶ 82-87 (Count Two), 88-93 (Count Three).) The parties each seek summary judgment on all Counts. (DMSJ at 2-17; PMSJ at 3-15.)

## II.  LEGAL STANDARD AND ANALYSIS

### A.  Standard of Review

The parties dispute which standard of review should apply to the benefit determination. Defendants argue that an abuse of discretion review is appropriate, while Plaintiff argues that because the Plan Administrator did not exercise its discretionary authority, the Court should conduct a de novo review of its decision. (DMSJ at 2-3; PMSJ at 7-8.) "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989). In this case, the Plan grants the Plan Administrator authority to administer the Plan, interpret the Plan, decide disputes, prescribe procedures, and appoint a Claims Administrator, among other things. (Doc. 74-5, R. Ex C-1 at 118-19.) The Plan allows the Plan Administrator "[t]o delegate to any person or entity such powers, duties and responsibilities as it deems appropriate." (*Id.* at 118.) Additionally, "a named fiduciary can appoint others to carry out fiduciary responsibilities (other than as a trustee) under the Plan." (*Id.* at 119.) Here, Microchip was the Plan Administrator. Microchip used HealthSmart as its Claims Administrator. Plaintiff argues that the Plan states that the Claims Administrator is not a fiduciary. (PMSJ at 8; Doc. 74-5, Ex. C-1 at 94 ("Claims Administrator is not a fiduciary of the Plan and does not have the authority to make decisions involving the use of discretion.").) Plaintiff also argues that the questions posed to the medical reviewers sought unauthorized interpretation of plan language. (PCSOF ¶ 54.)

Plaintiff has failed to show how Microchip's delegation of claim administration

was an abdication of its fiduciary responsibility. *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir. 1990) (noting that when the Plan Administrator has discretionary authority to delegate its powers, they are entitled to an arbitrary and capricious standard of review). Microchip gave HealthSmart criteria the doctors needed to have and conducted its own third review. (*See e.g.* Doc 74-3, Ex. B-6, Email from Ms. Flores at JB-HS-000054 (regarding clarification on the May 23 evaluation where use of the word "sometimes" was clarified by HealthSmart reviewers).) Plaintiff points to emails where Ms. Croft said "we advised [Plaintiff] that we have third parties to do all review and administration of the Plan and that Microchip does not make the decisions" and a Healthsmart email saying "I felt that our position is to protect the Plan and therefore could not reconsider the claims without a plan exception" as indicating that Microchip delegated its final decision making authority to its claims administrator in violation of the Plan. (PCSOF ¶¶ 60, 48.) Plaintiff notes that the Plan Administrator, Ms. Croft, did not review some of the documents from the hospital, provide the questions that HealthSmart asked the medical reviewers, or review the Plan interpretation the Phia Group provided. (PCSOF ¶¶ 192, 194-96.) Defendants respond noting that Plaintiff conceded that Microchip made the final decision, and that Microchip did make the decisions to deny the claim. (PSOF ¶ 85; Doc. 87, Defs.' Statement of Facts in Resp. to PSOF ("DCSOF") ¶¶ 41, 53-57.) The Court finds that the Administrative Records shows that HealthSmart acted as a claims administrator but Microchip made the final benefit determinations. The Court will review Microchip's benefit determination for abuse of discretion.[3]

---

[3] Plaintiff also argues that there was a conflict of interest, which warrants review with skepticism. (PMSJ at 13-14.) Plaintiff specifically argues that because the Plan is funded by Microchip, it did not exercise its fiduciary duties in favor of the employees. (*Id.*) Defendants argue that a structural conflict of interest does not warrant a different standard of review but only impacts a court's abuse of discretion review. (DMSJ at 3.) The Court agrees. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006) (noting that a court may consider the effect on the decision-making process of any conflict of interest); *Firestone*, 489 U.S. at 115. The Court also will not alter the standard of review based on Plaintiff's alleged procedural irregularities. (PMSJ at 14); *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005) ("[P]rocedural

### B. Entitlement to Benefits

Defendants argue that they are entitled to summary judgment because their decision to deny Plaintiff benefits was reasonable. (DMSJ at 4.) Defendants argue that the Plan specifically excludes coverage for medical treatment and services incurred as a result of the participant's illegal use of alcohol and for injuries incurred while taking part in an illegal activity. (*Id.*) A Plan Administrator abuses its discretion only if its discretionary determination is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). Said another way, "[a]n ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Berll/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (noting that "even a single persuasive medical opinion may constitute substantial evidence upon which a plan administrator may rely in adjudicating a claim.").

#### 1. Alcohol and Illegal Acts Exclusions

Plaintiff argues that it is not clear that H.B. violated the illegal acts exclusion under the Plan because there is not definition of "illegal acts" in the Plan and the Plan's interpretation is contrary to the reasonable expectations of participants. (PMSJ at 20.) Plaintiff also argues that the illegal use of alcohol exclusion does not apply because there was no showing of H.B.'s intent to break the law. (PMSJ at 23.) [4] The Plan excludes

---

violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm.").

[4] Plaintiff also argues that Defendants breached their duty by not providing Plaintiff with the statutory provisions and case law that state a minor drinking alcohol is illegal. (PMSJ at 17.) At oral argument Defendants agreed that they did not identify the specific statutory provisions but argued that it was not prejudicial to Plaintiff's claim handling because Plaintiff is unable to dispute that the law in fact prohibited H.B.'s actions. The Court agrees. The original November 7, 2012 Explanation of Benefits ("EOB") identified the Plan provisions that led to the denial of benefits. (Doc. 74-7, R. at 43-45, 55-56, 63-64.) The EOBs also outlined the procedures Plaintiff should follow to show an exception to the exclusions. (*Id.*)

- 6 -

"[s]ervices, supplies, care or treatment to a Plan Participant for an Injury or Sickness which occurred as a result of the Plan Participant's illegal use of alcohol." (Doc. 74-5, R. at 68.) The policy also excludes "[c]are, supplies, treatment, and/or services for any Injury or Sickness which is Incurred while taking part or attempting to take part in an illegal activity, including not limited to misdemeanors and felonies." (Doc. 74-5, R. at 70.)

The evidence Plaintiff has submitted does not show that the Plan Administrator's conclusion was illogical, implausible, or unsupported by the record. The Court does not find the Plan language vague or unambiguous. Plaintiff's citation to Ms. Croft's initial unease with the application of the exclusions is unpersuasive because Ms. Croft admitted that upon learning that it is against the law for a minor to drink alcohol, she agreed with the denial. (*See* PMSJ at 20-21; Doc. 87-1, Ex. 1Dep. of Linda Croft at 48:14-23.) While Plaintiff argues that more documents should be considered, the uncontroverted facts support the reasonableness of Defendants' decision. *See Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996), *overruled on other grounds by Kearny v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) (en banc).

### 2. Exceptions to the Exclusions

Plaintiff alternatively argues that even if H.B. violated either Plan exclusion, the exception to the exclusions applies. (PMSJ at 24-25.) Defendants note that before the first denial in November they were unaware that H.B. had ADHD, so when Plaintiff appealed claiming an exception to the exclusion based on H.B.'s ADHD the Claims Administrator requested records that documented his diagnosis. (DSOF ¶ 28.) The Claims Administrator had the additional documents and other documents in the record sent to a medical reviewer, and the Plan again denied the claim because the evidence Plaintiff supplied did not show a causal connection between H.B.'s ADHD and the alcohol intoxication. (DSOF ¶ 39-41; PSOF ¶ 123.) After the third denial, Ms. Croft and Ms. Flores met with Plaintiff again to figure out if she had any additional documents she could supply. (DSOF ¶ 64.) While Plaintiff argues that she never told Ms. Flores that she

1 had no further information, Plaintiff does not suggest that she told Ms. Flores that she had
2 retained an attorney and another doctor, Dr. Nicholls. In fact, Dr. Nicholls did not
3 examine H.B. until four days before the final denial was sent. (PSOF ¶ 18, Doc. 75-6 at
4 13 (Dr. Nicholls's Legal Time Log documenting that H.B. was examined on August 5,
5 2013 and that the report was generated August 21, 2013).) Even though Dr. Nicholls's
6 report concludes a causal connection between H.B.'s ADHD and his acute intoxication, it
7 is uncontroverted that the Plan was not aware of the report before the final denial was
8 issued on August 9, 2013. After the final denial, Plaintiff's entire file, including Dr.
9 Nicholls's report was sent for external review, and the claim was again denied. (Doc. 76-
10 5, Ex. I-37 at 123-27.)

11 Plaintiff consistently returns to her argument that Defendants did not conduct in-
12 person interviews to determine if H.B. had ADHD. (PSMJ at 18.) Defendants, however,
13 sought documentation supporting a causal connection between H.B.'s ADHD and his
14 excessive alcohol intake in July 2012 and, as noted above, the only document supplying
15 this connection was received after the fourth and final review. (Doc. 74-6, R. at 29
16 ("There is no clinical evidence to indicate that this ADHD affected the claimant's
17 decision-making process to have caused him to drink alcohol in the manner that he
18 did.").) Even considering the conclusions of Dr. Nicholls, three doctors made conclusions
19 directly contrary to his. *See Snow* 87 F.3d at 331 ("The mere fact that the plan
20 administrator's decision is directly contrary to some evidence in the record does not show
21 that the decision is clearly erroneous."). Defendants have demonstrated that there is
22 substantial evidence in the record to support their determination and that they did not
23 abuse their discretion in making their decision, therefore, the Court grants summary
24 judgment on the issue of Microchip's benefit determination in favor of Defendants.

25     **C.**    **Claims for Equitable Relief**

26 Defendants argue that because adequate relief was available for Plaintiff under
27 § 502(a)(1)(B) equitable remedies are not available in this case. (DMSJ at 12.) Plaintiff
28 argues that the remedies provided for under § 502(a)(1)(B) do not provide full relief

because Plaintiff is still a Plan Participant and Defendants' claim procedures could affect her in the future. (PMSJ at 29.) Plaintiff also argues that Defendants did not provide adequate notice in writing or afford her a reasonable opportunity for full and fair review, which constitutes a breach of their fiduciary duties. (*Id.* at 25-28.)

ERISA § 502(a)(3) allows civil actions to enjoin violations of any provision of ERISA. 29 U.S.C. § 1132(a)(3). The Ninth Circuit has concluded that where a plan participant or beneficiary has asserted specific claims under § 502(a)(1) and (2), they may not seek equitable claims for relief under § 502(a)(3). *See Ford v. MCI Commc'ns Corp. Health and Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir. 2005) *overruled on other grounds by Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011) (noting that "29 U.S.C. § 1123(a)(3) is a catchall provision that acts as a safety net, offering appropriate equitable relief for injuries caused by violations that 29 U.S.C. § 1132 does not *elsewhere* adequately provide remedy." (internal quotations omitted)). The cases Plaintiff cites for support were all decided prior the Ninth Circuit's *Ford* decision or are from courts outside the Circuit. The Court concludes that Plaintiff's claims cannot proceed as she has pursued a claim for relief under ERISA § 502(a)(1). Therefore, the Court grants summary judgment for the Defendants on Counts II and III.

## III.  CONCLUSION

The Court grants Defendants Motion for Summary Judgment on Count I because Microchip's denial of Plaintiff's claim was not an abuse of discretion. The Court grants summary judgment in favor of Defendants on Counts II and III because Plaintiff cannot pursue claims for equitable relief under § 502(a)(3) while pursuing claims under § 502(a)(1) and (2).

**IT IS ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 70).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Summary Judgment (Doc. 79).

/ / /

1 **IT IS FURTHER ORDERED** directing the clerk to enter judgment for Defendants.

Dated this 22nd day of March, 2016.

*Susan R. Bolton*
Susan R. Bolton
United States District Judge